IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


JOHN TEBBENS,                      )
      Plaintiff,                 )
                                 )     Case No. 09 C 3227
   v.                             )
                                 )
OFFICER DENNIS MUSHOL,             )
      Defendant.                 )
                                 )

## MEMORANDUM AND ORDER

     A former firefighter's attempts to collect money for charity have led to the instant lawsuit claiming false arrest under 42 U.S.C. § 1983 and seeking indemnification by the City of Chicago under state law. The defendants have moved for summary judgment, which the court grants.

**Facts**

     Tebbens is a former Chicago firefighter who, while employed as a firefighter, created a not-for-profit charitable organization called Helping Children of Abuse. Tebbens resigned as a firefighter in 2004 (the reasons for this are disputed but immaterial) but continued to work on the charity. In 2005, Tebbens began soliciting donations for the charity on a street corner in Chicago. Tebbens would approach individuals with a yellow and black rubber boot and ask them for money. The boot was approximately 20 to 21 inches tall and had an 8 ½ by 11 piece of paper taped on it that said "Helping Children of Abuse." When he was a firefighter, Tebbens had solicited money for other charities using a fireman's black boot. Tebbens found collecting money in a boot was beneficial because paper money did not blow away and it was easier to give back change. Accordingly, Tebbens decided to use this method when soliciting donations for his charity.

     <u>October 2005 encounter</u>. Tebbens began a tempestuous history with defendant Officer Mushol in October 2005 when Mushol and his partner received a radio call that someone was soliciting money at the intersection of Lincoln, Belmont and Ashland using a fireman's boot.[1] Mushol was aware that firefighters had a long-standing practice of collecting money in their boots and believed that the plaintiff's boot looked like a fireman's boot, which Tebbens disputes. Accordingly, when he arrived at the scene, Mushol asked Tebbens for identification. Mushol states that when Tebbens opened his wallet, Mushol saw what appeared to be a firefighter identification card with a picture of Tebbens on it. Tebbens testified that he gave Mushol his

---

     [1]The plaintiff's objection to this statement of fact on the ground of hearsay is denied as it is not being offered for the truth of the matter asserted.

Illinois driver's license, but Mushol took Tebbens' wallet and found what he mistakenly thought was a fireman's ID. Mushol asked Tebbens if he was a Chicago firefighter. Mushol testified that Tebbens responded that he was a former firefighter injured in the line of duty while Tebbens states that he said only that he had resigned as a firefighter. Mushol called in on the radio to verify that Tebbens was a former firefighter but was not able to obtain an answer at that time. Accordingly, Mushol filled out a contact card regarding his encounter with Tebbens by recording Tebbens' drivers' license number and the information from the Chicago Fire Department identification card. Mushol told Tebbens that he was going to check on him.

Later that week, Mushol called the Office of Emergency Management Communications to find out whether Tebbens was an injured or retired firefighter. Mushol states that he was told by the individual at the OEMC that Tebbens was no longer at the fire department and was not on disability. The OEMC representative also told Mushol that Tebbens may have been fired and referred Mushol to the Internal Affairs Department. Mushol spoke with an investigator at IAD who told him that Tebbens was not allowed to possess an active firefighter ID. The IAD officer further told Mushol that she would like to get the ID back and would assist in any prosecution of Tebbens related to the ID.

The plaintiff objects on the ground that the above statements by OEMC are hearsay. However, they are not being provided for the truth of the matter asserted; rather, they are being used to show what Mushol understood the situation to be and their effect on his actions. Thus, they are not hearsay.

April 1, 2006 encounter. On April 1, 2006, Tebbens was again soliciting money at the intersection of Lincoln, Belmont and Ashland in Chicago. Tebbens had been collecting money for his charity for a couple of hours when Mushol and his partner appeared at the intersection in a police van. Tebbens had a permit to solicit displayed (Mushol says with tape) on his vest. According to Tebbens, Mushol and his partner "came out [of the van] after asking me to come to them, rushed over, grabbed each one of my arms and elbows, and pushed me into the back of the paddy wagon." Tebbens Dep. at 88. In addition, Tebbens contends that Mushol accused him of being un-American and collecting money for terrorists. Alternatively, Mushol states that he approached Tebbens and asked for ID.

When Tebbens pulled out his firefighter ID again, Mushol arrested him for not having a valid city permit to solicit, failing to display a city permit and theft related to the firefighter ID. According to Tebbens, the first two counts were dismissed because he had a valid city permit to solicit money. Tebbens states that while Mushol did not have a good faith basis for charging him with theft of a fireman's ID, he ultimately agreed to a plea of supervision. Tebbens asserts that, at the hearing on the theft charge, when the Assistant State's Attorney indicated that the state would drop the charges if the fire department confirmed that it was not a fire department ID, Mushol became irate. In order to mollify Mushol, Tebbens' public defender and the prosecutors agreed to a plea of supervision on the condition that:

> John Tebbens not hold himself out as a member of the Chicago Fire
> Department and not collect money/donations on the street with a fireman's
> (or one similar) boot in the name of the Chicago Fire Department.

June 9, 2006, Order of Special Conditions of Bond or Release, attached as Exh. F to Defendants' Rule 56.1 Statement of Undisputed Facts.

<u>Subsequent encounters with the police</u>. After the April 1, 2006, arrest, on at least one occasion (Tebbens contends it was more than once), Mushol saw Tebbens soliciting money at the same intersection at Lincoln, Ashland and Belmont. According to Tebbens, Mushol made an announcement over the PA system in the patrol car not to give money to Tebbens because the charity was a fraud and a scam.

<u>May 30, 2007, arrest</u>. Tebbens was soliciting funds using the boot on May 30, 2007, at the same intersection when Mushol pulled up in his squad car. Mushol approached Tebbens because he believed Tebbens had been collecting money in violation of his order of supervision. Tebbens notes that Mushol testified at his deposition that he believed that he could arrest Tebbens for violation of the terms of Tebbens' supervision; however, when asked what statute allowed him to do that, Mushol stated that he was not certain. Mushol Dep. at pp. 52-53. Mushol instructed Tebbens to come over. Because Tebbens was collecting a donation from someone, he did not immediately respond, so Mushol purportedly screamed "Right now." Tebbens walked over to Mushol and they began talking about Tebbens' tenure at the fire department.

According to Tebbens, Mushol began making disparaging remarks about Tebbens and accusing him and his father, who was also a firefighter, of disgracing the fire department. Tebbens states that he told Mushol that his father had been president of the firefighters' union and negotiated salary and benefits that also helped police officers, that his father started the firefighters' widows and orphans fund, and that he died at age 57 due to lung cancer he contracted from serving as a firefighter. Tebbens also testified that Mushol called Tebbens' father an "asshole." Tebbens further testified that Mushol said to him that he was going to "make the charges stick this time" and that the judge wanted Tebbens to be a convicted felon. Tebbens told Mushol that based on his conversations with the prosecutor he was doing nothing wrong as long as he did not hold himself out as a firefighter or solicit money for the fire department.

Mushol testified at his deposition that he wanted Tebbens to accompany him to the station because Mushol believed Tebbens to be in violation of the supervision order and wanted to see if he could arrest Tebbens for that. Tebbens notes that Mushol testified that he was not sure that Tebbens was violating his supervision at the time and that he was not certain that he could arrest Tebbens for the alleged violation. After testifying that he was "pretty sure" he could arrest Tebbens for violating his supervision, Mushol states that he told Tebbens he was under arrest and began to pat him down to effectuate the arrest. Mushol states that as he reached out

for Tebbens, he gave Mushol a two-handed shove in the chest and then pulled away. On the other hand, Tebbens asserts that Mushol stated that the was going to make the charges stick this time and tell everyone that Tebbens tried to hit him, so Tebbens began calling out to people at a nearby bus stop to call the police. According to Tebbens, it was then that Mushol grabbed Tebbens. Tebbens testified that Mushol's attempt to pat him down consisted of Mushol "tugging" and "grabbing" him and "trying to grab [his] wallet." Tebbens also testified that he told Mushol "you can't search me" and backed away from Mushol.

Dawn Gaines, formerly Dawn Quinn, is a CTA bus driver who was operating a bus on May 30, 2007. As she was approaching the bus stop at Ashland and Belmont, she saw Officer Mushol approach Tebbens. When she stopped to pick up passengers, Gaines had a clear view of both Tebbens and Mushol, who were standing just a few feet away from the bus. She saw Mushol and Tebbens speaking but did not hear what they were saying. She saw Mushol trying to arrest Tebbens and stated that Tebbens was "kind of pulling away as to like why are you arresting me." According to Gaines, Tebbens was "just turning his body away from the officer" and was moving his shoulders back and forth and from side to side. At a hearing on a motion to quash at Tebbens' state criminal trial, Gaines testified that she heard Tebbens say to waiting passengers at the bus stop "Call the police. The officer said I struck him and I didn't."

Gaines also testified that she then saw Mushol make a call into his radio and other officers arrive like "they came out of nowhere." Gaines never saw Tebbens push, strike, or put his hands on Officer Mushol. Gaines wanted to get off the bus to "be a witness for Mr. Tebbens" but apparently she did not. Instead, she testified that she spoke with Rene Weiss, who had been at the bus stop and had boarded the bus, and believes that Weiss got off the bus to speak with the police. Weiss testified in her deposition that she saw Tebbens and Mushol talking in a normal tone of voice, and as she walked past them to board the bus, she heard Tebbens telling Mushol that "he was on the job and died on the job. My brother's still . . . ." before she was out of earshot. Weiss also saw Mushol put his hand "under the shirt" of Tebbens' left arm and heard Tebbens say "you have no right to search me," after which Weiss did not take her eyes off of Tebbens. According to Weiss, she saw Tebbens "trying to move out of the officer's grip by stepping backward" but he "didn't get far because the officer was holding onto his arm." Although the deposition testimony is difficult to follow, Weiss also heard Tebbens say either "He's saying I hit him" and "He's going to say I hit him."

Weiss later got off the bus to tell a police officer that Tebbens did not hit Mushol. Gaines testified at the state court motion to quash hearing that she spoke with one police officer who approached the bus and told him that Tebbens did not hit Mushol (though at her deposition she stated that she did not speak with any officers). It appears that Gaines and Weiss believe that the officer they spoke with had a white shirt, while Mushol denies that any sergeant or any other "white shirt" was ever at the scene of the arrest. None of the police officers asked Gaines for her CTA identification information.

At the criminal case hearing on the motion to quash, Mushol testified that when he

approached Tebbens on May 30, 2007, Tebbens was "argumentative and belligerent," and was yelling at Mushol that he was the "biggest asshole I've ever met or something." After that, Mushol decided to do a protective pat down search of Tebbens. Mushol testified further that when he reached for Tebbens' waist, Tebbens immediately shoved him with both hands, that Mushol grabbed Tebbens' arm and that Tebbens then broke away from him. Mushol did not go after Tebbens because Mushol "didn't want to get close to him."

Meanwhile, Mushol had called for assistance, which arrived immediately. Mushol testified that after the other officers arrived, they put handcuffs on Tebbens and put him in the police wagon, and that he had no part in restraining Tebbens or placing him in the wagon.

Tebbens contends that one of the arresting officers struck him on the leg with a nightstick or a flashlight when he was simply resisting being pushed by, he states, three different officers. Tebbens testified that he did not see who hit him because his focus was on the people at the nearby bus stop who Tebbens asserts were telling the police that he did nothing wrong. Mushol states that he was watching the officers during the entire arrest and that no one hit Tebbens in the leg with a nightstick or any other object. Tebbens did not think he was going to be arrested in front of all of the waiting bus passengers.

At all relevant times, Tebbens had valid City of Chicago permits to solicit. According to Tebbens, he never told anyone that he was with the Chicago Fire Department when he was soliciting funds for his charity.

Tebbens was taken to the Belmont/Western police station where he was charged with two counts of aggravated battery/harm to a peace officer, two counts of false impersonation of a firefighter, and possession of a fictitious driver's license. Plaintiff's Exh. I.

**Summary Judgment Standard**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Valenti v. Qualex, Inc*., 970 F.2d 363, 365 (7th Cir. 1992), *citing Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Moreover, a court should grant a motion for summary judgment only when the record shows that a reasonable jury could not find for the nonmoving party. *See Valenti*, 970 F.2d at 365; *see also Anderson*, 477 U.S. at 248.

Thus, in order to withstand a motion for summary judgment, the nonmoving party must show that a dispute about a genuine issue of material fact exists. *See Anderson*, 477 U.S. at 248. The nonmoving party may not merely rest upon the allegations or details in his pleading, but instead, must set forth specific facts showing there is a genuine issue for trial. *See Celotex*, 477

U.S. at 322; *Anderson*, 477 U.S. at 248.

**Analysis**

    A.    <u>Probable Cause</u>

Tebbens contends that Mushol falsely arrested him on May 30, 2007. To prevail on a claim of false arrest under 42 U.S.C. § 1983, a plaintiff must show that he was arrested without probable cause. *See Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009). Probable cause is an absolute defense to any claim under § 1983 against police officers for wrongful arrest. *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). Probable cause to arrest exists if the facts and circumstances known at the time of arrest are sufficient to warrant a prudent person to believe that the suspect has committed, is committing, or is about to commit an offense. *Id.* "In ascertaining whether an officer had probable cause, the court is to view the circumstances from the perspective of a reasonable person in the position of the officer." *Id*.

*Arrest for violation of supervised release*. Mushol contends that he had probable cause to arrest Tebbens for violating the terms of his supervised release. The plaintiff first argues that no Illinois statute provides that a violation of supervision is a crime for which Mushol could have arrested Tebbens and thus, Mushol could not have had probable cause for this arrest. *See United States v. McDonald*, 453 F.3d 958, 961 (7th Cir. 2006) ("An officer cannot have a reasonable belief that a violation of law occurred when the acts to which an officer points as supporting probable cause are not prohibited by law."). However, as noted by the defendant, pursuant to 730 ILCS 110/11, a police officer " may, anywhere within the state, arrest on view any probationer found by them violating any of the conditions of his or her probation. . . ." Probation is defined as "a sentence or disposition of conditional and revocable release under the supervision of a probation officer." 730 ILCS 5/5-1-18. Moreover, "Illinois permits a full custodial arrest for any crime on probable cause." *Taylor v. Bush*, No. 04 C 3396, 2006 WL 862855, at *5 (N.D. Ill. Mar. 30, 2006) (*citing* 750 ILCS 60/301(a) ("Any law enforcement officer may make an arrest without warrant if the officer has probable cause to believe that the person has committed or is committing any crime ... even if the crime was not committed in the presence of the officer.")). Thus, statutory authority exists for Mushol's arrest of Tebbens.

As to the probable cause to arrest Tebbens, it is undisputed that Mushol was aware that Tebbens had pled guilty to the earlier charge of theft of the firefighter's ID, and had received a term of supervision, a condition of which was to "not collect money/donations on the street with a fireman's (or one similar) boot in the name of the Chicago Fire Department." Mushol saw Tebbens soliciting money on the street using a boot similar to a fireman's boot and testified that he believed Tebbens was in violation of the court order of supervision. Mushol Dep. at 51 ("I was pretty darn certain that he was in violation of his order–the judge's order dealing with his supervision.").

Evidence of probable cause "need not show that the officer's belief is more likely true than

false." *Purvis v. Oest*, 614 F.3d 713 (7th Cir. 2010). "Even malicious motives will not support a claim of false arrest if probable cause exists." *Simmons v. Pryor*, 26 F.3d 650, 654 (7th Cir. 1993). "Probable cause requires only that a probability or a substantial chance of criminal activity exist." *Id.* (citation omitted). The court concludes that the evidence supports a finding that Mushol had probable cause to arrest Tebbens for violating his supervision.

Tebbens asserts that Mushol could not have had probable cause because Mushol admitted "that he did not know if Plaintiff was violating the order of supervision or if he had authority to arrest Plaintiff even if he was in violation of the conditions." Response at 8, Dkt. #64. However, as already noted, probable cause does not require a certainty of criminal activity, only a probability or a substantial chance. *U.S. v. Watts*, 535 F.3d 650, 656 (7th Cir. 2008). As to Mushol's understanding of his authority to arrest Tebbens, Mushol stated that he believed that violating supervision was conduct for which he could arrest someone, and, as described above, he was correct. The fact that he may not have been entirely certain about it does not eliminate the existence of probable cause.

Finally, Tebbens' contention that there must not have been probable cause because he was not charged with violating his supervision does not alter this court's conclusion because "[t]he actual existence of *any* probable cause to arrest precludes a § 1983 suit for false arrest." *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751 (7th Cir. 2006) (emphasis in original). *See also U.S. v. Williams*, 495 F.3d 810, 817 (7th Cir. 2007) (noting that in *Devenpeck v. Alford*, 543 U.S. 146 (2004), the Supreme Court "held that as long as the officers had probable cause to arrest [the defendant], it was irrelevant that they had eventually charged him with different crimes.").

*Resisting Arrest*. Tebbens also argues that Mushol did not have probable cause to arrest him for resisting arrest. However, "[i]f police had probable cause to believe the plaintiff committed any crime, this defeats a false arrest claim, even if the plaintiff was arrested on charges for which there was no probable cause." *Jenkins v. Spaargaren*, No. 09 C 3453, 2011 WL 1356757, at *5 (N.D. Ill. Apr. 7, 2011) (*citing Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 682 (7th Cir. 2007)). Thus, even if there was no probable cause for arresting Tebbens for resisting arrest, the court has already concluded that Mushol had probable cause to arrest Tebbens for violating his supervised release; accordingly, the false arrest claim is defeated and the court need not address whether probable cause existed for resisting arrest.

B. Qualified Immunity

Alternatively, the defendants move for summary judgment on the false arrest claim based upon qualified immunity. Qualified immunity shields public officials from liability when they act in a manner that they reasonably believe to be lawful, even if their judgment proves to be mistaken. *Gonzalez*, 578 F.3d at 540; *see also Chelios v. Heavener*, 520 F.3d 678, 691 (7th Cir. 2008) (qualified immunity extends to "officers who make a reasonable error in determining whether there is probable cause to arrest an individual."). A defendant is entitled to qualified immunity unless: (1) the facts, taken in the light most favorable to the plaintiff, show that the

Page 7

defendants violated a constitutional right; and (2) that constitutional right was clearly established at the time of the alleged violation. *Chelios*, 520 F.3d at 691. In addressing qualified immunity, the nonmovant's version of the facts must be accepted as true. *Payne v. Pauley*, 337 F.3d 767, 775 (7th Cir. 2003). As recently noted by the Seventh Circuit in the context of a false arrest claim:

> Whether police officers had probable cause to arrest a suspect and whether they are entitled to qualified immunity for the arrest are closely related questions, although qualified immunity provides the officers with an "additional layer of protection against civil liability" if a reviewing court finds that they did not have probable cause. In an unlawful arrest case in which the defendants raise qualified immunity as a defense, this court will "determine if the officer actually had probable cause or, if there was no probable cause, whether a reasonable officer could have mistakenly believed that probable cause existed." If the officers can establish that they had "arguable probable cause" to arrest the plaintiff, then the officers are entitled to qualified immunity, even if a court later determines that they did not actually have probable cause. Accordingly, we will affirm the district court's grant of summary judgment if we find that "a reasonable police officer in the same circumstances and with the same knowledge ... as the officer in question could have reasonably believed that probable cause existed in light of well-established law."

*Carmichael v. Village of Palatine, Ill.*, 605 F.3d 451, 459 (7th Cir. 2010) (citation and internal citations omitted).

Even if the court had concluded that probable cause did not exist for the arrest for violating supervision, the court finds, given the facts presented here and viewed in a light most favorable to the plaintiff, that a reasonable officer could have mistakenly believed that probable cause existed.

**Conclusion**

For the reasons stated above, the defendants' motion for summary judgment as to the false arrest claim [60-1] is granted. Because judgment has been entered as to the false arrest claim, judgment in favor of the City is also entered as to the indemnification claim. The clerk is directed to enter a Rule 58 judgment and terminate this case from the court's docket.

**Date**: June 1, 2011

_____
**District Judge Blanche M. Manning**